2012 OK CIV APP 73

**OKLAHOMA DEPARTMENT OF MENTAL HEALTH & SUBSTANCE ABUSE and Compsource Oklahoma, Petitioners/Counter–Respondents,**

v.

**David R. PIERCE and The Workers' Compensation Court, Respondent/Counter–Petitioner.**

**Nos. 110,316, 110,338.**

Court of Civil Appeals of Oklahoma, Division No. 2.

July 3, 2012.

---

**896**

Jeffrey D. Black, Steven E. Hanna, Bonham & Howard, Oklahoma City, Oklahoma, for Petitioners/Counter–Respondents.

Daniel J. Talbot, Halley & Talbot, Oklahoma City, Oklahoma, for Respondent/Counter–Petitioner.

JANE P. WISEMAN, Judge.

¶ 1 Oklahoma Department of Mental Health & Substance Abuse and Compsource Oklahoma seek review of an order of a three-judge panel that affirmed the decision of a judge of the Workers' Compensation Court awarding death benefits to David R. Pierce as the surviving spouse of Vicki Dunn. Pierce seeks review of that same order which affirmed the trial court's denial of his request for attorney fees, costs, penalties and interest. After review, we conclude that the Workers' Compensation Court's determination that Pierce is the common law spouse of Vicki Dunn is supported by the evidence, but we vacate the trial court's denial of Pierce's request for attorney fees, costs, penalties and interest. Accordingly, we sustain in part, vacate in part, and remand for further proceedings consistent with this Opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Claimant David R. Pierce filed a Form 3A on August 14, 2009, as the husband of Vicki Dunn, who died in a motor vehicle accident while working for her employer, Department of Mental Health & Substance Abuse. Department in response filed a Form 10 in which it denied Claimant was the spouse of Dunn and denied that he had standing to file a Form 3A.

¶ 3 A trial on the issue of whether Claimant was Dunn's common law spouse was held on June 24, 2010. At trial, Claimant's attorney informed the court "[t]hat the State of Oklahoma by and through Judge G. Wayne Olmstead in Woodward County District Court found David Pierce to be the spouse and inherent [*sic*] law of Vicki Dunn and appointed him the personal representative of her estate." Department and Compsource Oklahoma (collectively, Petitioner) argued it had no notice of the hearing in the Woodward County District Court and had no opportunity to contest the finding of a common law marriage. In response to Petitioner's argument that there was no common law marriage between Claimant and Dunn, the Workers' Compensation Court stated the following:

> We do have a judicial determination of common law marriage and that's where I am having a little bit of trouble understanding. I'm going to let you put on your case. I'm not telling you that. But I'm just saying, it would seem to me that we already have a court making a determination.

¶ 4 Claimant testified he is the common law spouse of Dunn. Department sent Dunn to an out-of-town meeting and as she was returning from that meeting, she was killed in a motor vehicle accident on January 22, 2009. Claimant testified he went on his first date with Dunn in 2004 and they continued to date each other continuously and exclusively. Dunn moved into Claimant's home in 2005, and the couple began to live together as husband and wife. The couple started telling people they were husband and wife in 2006. Claimant introduced evidence that Dunn appointed him as payee on a payable-on-death credit union bank account, they had a joint checking account with right of survivorship, and they purchased an automobile together and put both of their names on the title. Claimant testified that they held themselves out as husband and wife and shared family duties and responsibilities, money, and bills.

¶ 5 On August 10, 2007, Dunn and Claimant signed a document titled "Request for Coverage for Common Law Spouse," which stated the following:

> I understand I am permitted to enroll an individual who I claim is a common law spouse. I hereby swear and affirm under

penalty of perjury that the following is true and correct:

1. This person, David R. Pierce, and I have an actual and mutual agreement between ourselves to be husband and wife.

2. This is a permanent relationship.

3. Our relationship is exclusive, as proven by our cohabitation as husband and wife and hereby hold ourselves out publicly as husband and wife.

The form was submitted to the Employees Benefits Council of the State of Oklahoma to allow Dunn to obtain insurance coverage for Claimant through her employment. After Dunn's death, Department also reviewed and considered who was entitled to receive Dunn's final paycheck and then sent it to Claimant as her husband.

¶ 6 Claimant testified that the couple was planning a ceremony in Las Vegas but they had not set a date. They were planning the ceremony to travel to Las Vegas with family to have a good time, not because they thought they were not married. Claimant had previously given Dunn a wedding ring, but she did not have the ring on at the time of her death because it kept slipping off and she had taken it to be resized. Claimant filed their tax return for 2009 as married filing jointly, but he had not done so in prior years on advice of his certified public accountant (CPA).

¶ 7 On cross-examination, Claimant testified that he never put Dunn's name on the deed to his home or on any corporate records for their business. He admitted that the couple never filed their taxes jointly while Dunn was alive. Dunn was not listed on any of Claimant's insurance policies. Dunn's sons, Joshua Mitchell and Brandon Mitchell, confirmed Claimant's testimony that Claimant was Dunn's husband.

¶ 8 On July 9, 2010, the Workers' Compensation Court issued an order awarding death benefits. The court concluded Claimant is the common law spouse of Dunn. The court stated, "THAT no personal representative has been appointed for the estate of the deceased, but this action is brought by [Claimant] the SURVIVING SPOUSE of the deceased and he is the proper party to bring such action." The court further found that Claimant is the only person dependent on Dunn at the time of her death "and no other or others, who are heirs-at-law, have suffered a pecuniary loss by reason of [Dunn's] death." The court ordered Petitioner to pay funeral expenses and to pay Claimant $100,000 in death benefits in a lump sum and $478.10 per week, of which 75.71 weeks have accrued. The court found $27,239.39 to be a reasonable attorney fee for the services provided by Claimant's attorney and ordered the sum to be deducted from the accrued weekly benefits.

¶ 9 Petitioner appealed the trial court's decision to the court en banc on July 19, 2010. However, on July 14, 2010, the trial court vacated the July 9, 2010, order. On July 22, 2010, the trial court filed a new order which again found Claimant to be Dunn's common law spouse and awarded him $100,000 and $478.10 per week. The new order, however, stated that 76.86 weeks had accrued. The major change in the new order was the trial court's determination "that $58,248.00 is a reasonable attorney fee for legal services performed by [C]laimant's attorney" and that this "amount shall be commuted to a lump sum under the provisions of 85 O.S. Section 41 to be deducted from the beneficiaries['] weekly payments at 10% per week until recouped by respondent under 85 O.S. Section 30."

¶ 10 On July 27, 2010, Petitioner filed an amended request for review and appeal to the court en banc seeking review of the revised order of the trial court. Claimant had not filed an appeal from the July 9, 2010, order. However, on July 28, 2010, Claimant filed a request for review of the July 22, 2010, trial court order on the issue of the denial of his motion for penalties, interest, costs and attorney fees. Claimant also asserted the trial court erred in finding that (1) no personal representative had been appointed for Dunn's estate, and (2) no other heirs at law have suffered a pecuniary loss.

¶ 11 This Court, in its opinion in Case No. 108,803, was unable to review the order of the three-judge panel because it purported to affirm a trial court order that has been vacat-

ed. Claimant asserted that the three-judge panel made a scrivener's error when it affirmed the July 9, 2010, order. Petitioner asserted that the order of the three-judge panel was facially flawed because it affirmed the July 9th order making it unclear from the face of the order whether the three-judge panel addressed the proper order. We agreed with Petitioner because we were unable to determine from the order of the three-judge panel or the record on appeal whether the panel's decision was based on its review of the July 9th order or the July 22nd order. We vacated the panel's order and remanded for the panel to correct the order or provide the reason why it reviewed the July 9, 2010, order rather than the July 22, 2010, order.

¶ 12 On remand, the three-judge panel found "that the Order Determining Compensability and Awarding Death Benefits" entered by the trial court on "JULY 22, 2010, was not against the clear weight of [the] evidence nor contrary to law and the same is hereby AFFIRMED." The three-judge panel stated that it did not review the July 9, 2010, order and instead only reviewed the July 22, 2010, order in reaching its decision.

¶ 13 Petitioner again appeals from the decision to award Claimant death benefits, and Claimant appeals from the denial of his request for attorney fees, costs, penalties and interest.

## STANDARD OF REVIEW

¶ 14 The Oklahoma Legislature changed the level of appellate deference to be given findings of fact by the Workers' Compensation Court, and our standard for reviewing that court's findings on non-jurisdictional fact issues is now governed by 85 O.S.2011 § 340, which became effective on August 26, 2011:

*After the effective date of this act, regardless of the date of injury,* the Supreme Court may modify, reverse, remand for rehearing, or set aside the order or award upon any of the following grounds:

2. The order or award was contrary to law;

. . .

4. The order or award was against the clear weight of the evidence.

85 O.S.2011 § 340(D) (emphasis added). The standard of review in effect when this appeal was ready for decision is that provided in the 2011 amendment,[1] and we employ the clear weight of the evidence standard in our analysis of the common law marriage issue.

¶ 15 When "we review the court's denial of attorney fees and costs based on the lower court's finding of reasonable or unreasonable conduct under [85 O.S.] § 30, ... we review for abuse of discretion." *Pinnacle Rehab. Hosp. v. Rivera–Villareal,* 2008 OK CIV APP 115, ¶ 11, 215 P.3d 823, 827. Reversal for "abuse of discretion requires a finding that the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence." *Id.* (citation omitted.)

## ANALYSIS

### 1. *Common Law Marriage*

¶ 16 The determination of the weight and probative value to be given evidence is within the exclusive province of the Workers' Compensation Court " 'which may accept all or part of the evidence, or reject evidence entirely.' " *Berg v. Parker Drilling Co.,* 2004 OK 72, ¶ 14, 98 P.3d 1099, 1101–02 (quoting *Refrigerated Transp., Inc. v. Creek,* 1979 OK 11, ¶ 19, 590 P.2d 197, 200). The Workers' Compensation Court in the present case found that Claimant was the spouse of Dunn. After examining the record under the applicable review standard, we find this decision is clearly supported by the weight of the evidence.

¶ 17 "A common law marriage is formed when 'the minds of the parties meet in consent at the same time.' " *Standefer v. Standefer,* 2001 OK 37, ¶ 11, 26 P.3d 104, 107 (quoting *Reaves v. Reaves,* 1905 OK 32, ¶ 8, 15 Okla. 240, 82 P. 490, 492). "Some evidence of consent to enter into a common law marriage are cohabitation, actions consistent with the relationship of spouses, recognition

---

1. Claimant raises the issue of the constitutionality of the standard of review, which we decline to

address as not necessary to the resolution of this appeal.

by the community of the marital relationship, and declarations by the parties." *Id.*

¶ 18 The primary evidence in support of the common law marriage is the document titled "Request for Coverage for Common Law Spouse" signed by Dunn in which she declared that she entered into a mutual agreement with Claimant to be husband and wife. Claimant also signed that document. Claimant submitted testimony that the two cohabitated and were recognized by others as husband and wife and offered evidence that the Woodward County District Court found that Claimant is Dunn's spouse and appointed him personal representative of her estate.

¶ 19 Petitioner acknowledges that the evidence submitted by Claimant could be viewed as creating "a presumption of a common law marriage." Petitioner, however, claims any presumption was destroyed by several pieces of evidence including that Claimant never placed Dunn's name on the deed of the house, Claimant and Dunn continued to file their taxes as single persons after they signed the affidavit acknowledging their common law marriage, and that they planned to go to Las Vegas for a formal ceremony. Claimant countered these allegations through testimony that he bought the house before he began living with Dunn, they only planned a celebration in Las Vegas to celebrate the marriage that already existed, and he filed his taxes as a single person on the recommendation of his CPA.

¶ 20 The decision of the Workers' Compensation Court finding Dunn and Claimant were married is not against the clear weight of the evidence. Claimant's evidence, in particular the affidavit executed under penalty of perjury declaring a common law marriage, supports the decision of the Workers' Compensation Court, and the refusal of the court to invalidate the marriage based on the evidence cited by Petitioner is not against the

clear weight of the evidence. As one might reasonably conclude, it is easier to tie the knot than it is to untie it. Although the trial court made no decision finding it was bound by the Woodward County District Court determination, the trial court was free to consider the District Court's appointment of Claimant as surviving spouse to act as personal representative of Dunn's estate.[2] For the foregoing reasons, we sustain the court's order on the issue of Claimant's right to compensation for death benefits as Dunn's surviving spouse.

### 2. 85 O.S. Supp.2005 § 30(A)(1)

¶ 21 In his counter-appeal, Claimant primarily asserts that Petitioner's refusal of death benefits was without a reasonable basis and that he is entitled to attorney fees, costs, penalties, and interest pursuant to 85 O.S. Supp.2005 § 30(A)(1). Petitioner in this appeal did not file an answer brief in response to Claimant's counter-appeal. Where a party fails to file an answer brief to a counter-appeal, and the failure to file such brief is not excused, then "we are under no obligation to search the record for some theory to sustain the trial court's judgment." *Williams & Kelley Architects v. Independent Sch. Dist. No. 1, Okmulgee Cnty.,* 1994 OK CIV APP 113, ¶ 8, 885 P.2d 691, 694. As long as the counter-appellant's brief in chief "is reasonably supportive of the allegations of error, we will reverse and, if necessary remand for further proceedings." *Id.* However, reversal is never automatic for failure to file an answer brief. *Hamid v. Sew Original,* 1982 OK 46, ¶ 7, 645 P.2d 496, 497. In this case, we find Claimant's brief is reasonably supportive of his allegations of error for the reasons delineated below.

¶ 22 Title 85 O.S. Supp.2005 § 30(A)(1)[3], the statute in effect on the date of Dunn's death, provided:

shared the same interest in opposing the wife's common law marriage claim. Here, Dunn's sons did not contest the common law marriage status of Dunn and Claimant, a position more beneficial to them than opposing such a determination.

---

2. We decline to dismiss Petitioner's appeal based on *In re Death of Hyde*, 2011 OK 31, 255 P.3d 411, as requested by Claimant. From our review of the facts, it does not appear that identity of interest can be said to exist between Dunn's sons and insurer, and we are not convinced that the issue was actually litigated in the earlier proceeding, as was the case in *Hyde* where the mother of the deceased employee and the insurer

3. Title 85 O.S.2011 § 344(A) currently provides:

If the Workers' Compensation Court before which any proceedings for compensation or concerning an award of compensation have been brought, under the Workers' Compensation Act, determines that such proceedings have not been brought on a reasonable ground, or that denial of benefits has not been based on a reasonable ground, the Court shall assess the total cost of the proceedings on the party, who has brought them or the party who has unreasonably denied payment of benefits.

Claimant asserts Petitioner's denial of benefits was unreasonable given the fact that Department, as Dunn's employer, recognized Claimant as Dunn's common law husband. We agree. In 2007, Department provided health insurance coverage to Claimant as Dunn's spouse based on her declaration under penalty of perjury that they were husband and wife. Additionally, after her death, Department sent Dunn's final paycheck to Claimant after it concluded that as her husband, he was the proper recipient. These facts show that Department recognized Claimant as Dunn's spouse.

■ ¶ 23 We review the denial of Claimant's request for costs, attorney fees, penalties, and interest pursuant to 85 O.S. Supp. 2005 § 30(A)(1) for abuse of discretion. *Pinnacle Rehab. Hosp. v. Rivera–Villareal*, 2008 OK CIV APP 115, ¶ 11, 215 P.3d 823, 827. Given the evidence presented by Claimant, it was an abuse of discretion to find that Petitioner's denial of death benefits was based on reasonable grounds. The evidence establishing the common law marriage between Dunn and Claimant in large part consisted of Employer's recognition of and reliance on the couple's marital status in conferring employment-related benefits. Employer accepted Dunn's and Claimant's certification in August 2007 in their "Request for Coverage for Common Law Spouse" that (1) Claimant and Dunn had mutually agreed to be husband and wife, (2) it was a permanent relationship, and (3) it was an exclusive relationship as proven by marital cohabitation and "holding

[themselves] out" publicly as husband and wife. These are precisely the time-honored elements the Oklahoma Supreme Court has established as necessary to prove the existence of a common law marriage. *In re Estate of Stinchcomb*, 1983 OK 120, ¶ 10, 674 P.2d 26, 28–29. Although Petitioner argues that such evidence creates a "rebuttable presumption," it would be difficult to envision proof of a common law marriage more concrete and definite than this declaration.

¶ 24 Petitioner offers the *Stinchcomb* case as analogous to the present case, arguing that, with "even more factors existing to destroy any presumption" of common law marriage here, the same result should obtain. Unlike the facts in *Stinchcomb*, in which the appellant and the decedent had signed an antenuptial agreement stating that they were both single but intended to get married, here there is formal documentation signed by Claimant and Dunn specifically acknowledging that they are, in fact, married. Petitioner states in its brief on appeal that "[w]hile evidence was presented at trial to show that [Dunn] had added [Claimant] to her bank accounts and insurance policies, there does not exist a mutuality of actions. [Claimant] admitted that he never added [Dunn] to his insurance policies, nor ... on his bank accounts." Even in cases of ceremonial marriages, married couples choose to transfer some items of separate property into joint property, but not others, for a variety of reasons, some personal and some financial. Mutual transfers of property have never been the lodestar of whether a marriage exists, either common law or ceremonial.

¶ 25 Also unlike the antenuptial agreement in *Stinchcomb*, there is no evidence showing that Claimant and Dunn intended at some future time to become husband and wife. Petitioner points to the Las Vegas plans and the wedding ring as evidence "that their relationship had not reached the level of marriage." The evidence of plans for a Las Vegas ceremony, rather than vitiating the existence of a marriage, reinforced it as a

If the Workers' Compensation Court determines that any proceeding has not been brought on a reasonable ground, or that denial of benefits has not been based on a reasonable

ground, the Court shall assess the total cost of the proceeding on the party who has brought the proceeding, or the party who has unreasonably denied payment of benefits.

ceremonial celebration of an existing union. The evidence in the record regarding Dunn's wedding ring is that Claimant had given it to her some time before, but she had taken it back to the jeweler to have it re-sized "because it was slipping off her finger." None of this evidence supports Petitioner's argument that marriage was a matter of future intention between Claimant and Dunn.

¶ 26 With this evidence as the foundation for finding Claimant and Dunn were married, the denial of benefits was not based on reasonable grounds, and the court was required to assess the cost of the proceedings against Petitioner. Section 30(A)(1) specifically provides that where "denial of benefits has not been based on a reasonable ground, the Court *shall assess* the total cost of the proceedings on the party, who has brought them or the party who has unreasonably denied payment of benefits." (Emphasis added.) In construing statutory language, "[t]he term 'may' is ordinarily construed as 'permissive' while 'shall' is commonly considered to be mandatory." *Oklahoma Pub. Emps. Ass'n v. State ex rel. Office of Pers. Mgmt.*, 2011 OK 68, n. 18, 267 P.3d 838.

¶ 27 Because the denial of benefits was not reasonable, we remand the case for the trial court to determine and assess the cost of the proceedings against Petitioner. Also upon remand, the trial court should correct its order, as Claimant requested, to show that Claimant was appointed the personal representative of Dunn's estate and that Compsource Oklahoma paid Dunn's younger son for pecuniary loss.

## CONCLUSION

¶ 28 We see no error in the Worker's Compensation Court's conclusion that Claimant was Dunn's spouse and thus eligible to receive death benefits. Further, Claimant established that it was an abuse of discretion to deny Claimant's request for relief pursuant to 85 O.S. Supp.2005 § 30(A)(1). Accordingly, we sustain in part, vacate in part, and remand for further proceedings.

1. Although several defendants are listed in the trial court petition, we use the case style shown

¶ 29 **SUSTAINED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

FISCHER, C.J., and BARNES, P.J., concur.